**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No. 0:20-cv-61936-RAR

ROLAND RAOUF DAHDOUH,
ALEJANDRO MORALES,

    Plaintiff,

v.

ROAD RUNNER MOVING AND
STORAGE, INC., et al.,

    Defendants.
_____/

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND INCORPORATED STATEMENT OF MATERIAL UNDISPUTED FACTS AND MEMORANDUM OF LAW**

Defendants, by and through undersigned counsel, hereby file their Motion for Summary Judgment against Plaintiffs and state as follows:

**SUMMARY OF ARGUMENT**

Defendants are entitled to summary judgment in their favor and against Plaintiffs as a matter of law because Plaintiffs were not paid less than minimum wage, did not work more than forty hours, or were exempt from the FLSA's requirements under the retail sales exemption as commissioned salespeople in the weeks in which they did. Additionally, to the extent Plaintiffs rely on time they spent selling services away from Road Runner Moving and Storage, Inc.'s ("Road Runner") facility, which was never reported to Road Runner, or other Defendants, Plaintiffs are estopped from claiming such time due to their failure to report it to the Defendants.

**STATEMENT OF MATERIAL UNDISPUTED FACTS**

Pursuant to S.D. Fla. L.R. 56.1(a), Defendants are filing simultaneously a separate Statement of Material Undisputed Facts ("SMUF") in support of this motion, which is incorporated herein by reference.

1

## **LEGAL ARGUMENT**

### a. **Summary Judgment Standard**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See, *Fed. R. Civ. P. 56(c)*. The moving party bears the burden of demonstrating the lack of any material dispute, after which the nonmoving party must show the existence of a genuine issue for trial if it is to avoid summary judgment. See, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, (1986). Rule 56 is based upon the principle that if the Court is made aware of the absence of any genuine issues of material fact, it should, on motion, promptly adjudicate the legal questions which remain and terminate the case, thus avoiding the delay and expense associated with a trial. See, *U.S. v. Feinstein*, 717 F. Supp. 1552, 1555 (S.D. Fla. 1989) Despite the presumptions in favor of the non-moving party, the court must be mindful of the purpose of Rule 56 which is to eliminate the needless delay and expense to the parties and to the court occasioned by an unnecessary trial. See, *Fuentes v. CAI Int'l, Inc.*, 728 F. Supp. 2d 1347 (S.D. Fla. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986)). Consequently, the non-moving party cannot merely rest upon his (her) bare assertions, conclusory allegations, surmises or conjectures. *Id*. "A court's focus in considering a motion for summary judgment is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" See, *Velasquez v. All Fla. Sec. Corp.*, No. 07-23159-CIV, 2008 U.S. Dist. LEXIS 100954, at *3 (S.D. Fla. Dec. 15, 2008) (citing *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997)). The non-moving party is required to "go beyond the pleadings" and present competent evidence

designating "'specific facts showing that there is a genuine issue for trial.'" See, *Celotex Corp.* Id. at 324. "The mere existence of a scintilla of evidence in support of the position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." See, *Johnson v. Bd. of Regents*, 263 F.3d 1234 (11th Cir. Ga. 2001). Consequently, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment -- there must be no genuine issue of material fact. See, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "An issue is not genuine if it is unsupported by the evidence or created by evidence that is 'merely colorable' or not 'significantly probative.'" *Id*. at 249-50. A fact is considered material only if it is identified by the substantive law as an essential element of the non-moving party's case. *Id*. at 248. "[U]nless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party, 'summary judgment shall be rendered.'" *Id*. at 249. Stated differently, "[T]he nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." See, *Matsushita*, Id. at 587. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." See, *Matsushita*, Id. at 587.

Finally, "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." See, *Baca v. Fla. Roofing Solutions, Inc.*, 2013 U.S. Dist. LEXIS 38563 (S.D. Fla. Mar. 20, 2013) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Carson v. J Curt Inc.*, 1:06-CV-00098-MP-AK, 2007 U.S. Dist. LEXIS 11903, 2007 WL 601925, at *2 (N.D. Fla. Feb. 21, 2007) "A court is not required to allow a case to go to trial 'when the inferences that are drawn from the evidence, and

upon which the non-movant relies are 'implausible.'" *Id*. at *4 (citing *Mize v. Jefferson City Board of Education*, 93 F.3d 739, 743 (11th Cir. 1996))

### b. Plaintiffs Were Sales People Subject to the Retail Sales Exemption of the FLSA

Plaintiffs were not entitled to overtime pay, as a matter of law, because they were exempt from the FLSA's overtime requirement as commissioned sales employees. Section 7(i) of the FLSA sets forth an exemption ("Retail Sales" or "7(i)" exemption) for retail or service employees who are paid on a commission basis. See, *29 U.S.C. § 207(i)*. The statute imposes three requirements that must be satisfied to establish the applicability of the exemption:

(1) The employer is a retail or service establishment;

(2) The regular rate of pay of the employee is in excess of one and one-half times the minimum hourly rate applicable to him under 29 U.S.C. § 206; and

(3) More than half of the employee's compensation for a representative period (not less than one month) represents commissions on goods or services.

See, *Henriquez v. Total Bike, LLC*, No. 13-20417-CIV-MORENO, 2013 U.S. Dist. LEXIS 179592, at *7 (S.D. Fla. Dec. 23, 2013) (citing *29 U.S.C. § 207(i)*); see also, *Klinedinst v. Swift Invs., Inc*., 260 F.3d 1251, 1254 n.2 (11th Cir. 2001) (quoting *29 U.S.C. § 207(i)*).

### 1. The Court Needs to Give the Exemption a Fair Reading, Not a Narrow One

As an initial matter, contrary to the now nullified longstanding caselaw often cited by FLSA Plaintiffs, the United States Supreme Court has recently held that exemptions (including the one at issue here) are to be given a *fair* reading, and not a *narrow* one.

> "The Ninth Circuit also invoked the principle that exemptions to the FLSA should be construed narrowly. 845 F. 3d, at 935-936. We reject this principle as a useful guidepost for interpreting the FLSA… We thus have no license to give the exemption anything but a fair reading."

See, *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018). Fair reading is described as "how a reasonable reader, fully competent in the language, would have understood

the text at the time it was issued." See, *Ramirez v. Statewide Harvesting & Hauling, LLC*, No. 20-11995, 2021 U.S. App. LEXIS 15215, at *6 (11th Cir. May 21, 2021) (citing Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 63 (2012)).

### 2. Road Runner is a Retail or Services Establishment

For Road Runner to qualify as a "retail or service establishment," the following must apply: (1) a business must "engage in the making of sales of goods or services"; 2) "75 percent of its sales of good or services, or of both, must be recognized as retail in the particular industry"; and 3) "not over 25 percent of its sales of goods or services, or of both, may be sales for resale." See 29 C.F.R. §779.313.

It is undisputed that selling moving services, as Road Runner here did (and as Plaintiffs did for Road Runner) means that Road Runner "engages in the making of sales of services." This is simply a common person reading of its business. It is axiomatic that moving services are services.

Next, the second requirement consists of two components: first, 75 percent of the establishment's sales must be recognized by the industry as retail; and, second, the establishment must have a retail concept. See, 29 C.F.R. §779.316. Here, the entirety of Road Runner's sales are generated from its retail sales of its moving services to the end consumers – the people who use its services to move. Other than additional sales of packing supplies incidental to moving – also to the end users, there are no other streams of revenue for Road Runner. See, **Ex. A.** *Declaration of John Mather*, ¶11. As to the second component of the second element, it is clear that Road Runner has a "retail concept."

Indicia or a "retail concept" are set forth in 29 C.F.R. §779.318(a), which states that a retail or services establishment typically meets these criteria:

- "sells goods or services to the general public,"
- "serves the everyday needs of the community,"
- "is at the very end of the stream of distribution,"
- "dispos[es] in small quantities [its] products or skills," and
- Does not take part in the manufacturing process."

Here, Plaintiffs themselves testified that they were retail-selling Road Runner's moving services to the end consumers. See, ***Ex. C***., *Morales Depo. Trans.,* 57:7-15

Until recently, the DOL' regulations (former 29 C.F.R. §779.317) listed "Transportation companies" among the list of establishments that categorically could not qualify as a "retail or service establishment" under any circumstances because they lacked a retail concept. However, on May 19, 2020, the DOL withdrew that list (see 85 FR 29867), in part because numerous courts have questioned its reasoning. For instance, one court of appeals criticized the list as an "incomplete, arbitrary, and essentially, mindless catalog." See, *Alvarado v. Corp. Cleaning Servs., Inc*., 782 F.3d 365, 371 (7th Cir. 2015) With the withdrawal of the list, even the DOL applies the same analysis (the analysis highlighted in 29 C.F.R. §779.318(a)) to all establishments to determine their "retail concept" and not applying a list of predetermined businesses that are included or excluded. See, 85 FR 29868.

Applying the criteria listed in 29 C.F.R. §779.318(a), it is clear that Road Runner has a "retail concept": it sells its services to the general public interested in moving; it serves the everyday needs of the community to move from here to there; it sells the services they provide themselves – thus it is clear that it is at the end of the stream of distribution and not a wholesaler of these services; it sells its services to the consumers in small quantities – one move at a time; and, finally, it is not part of any manufacturing process.

Lastly, Road Runner's moving services are never resold by those who purchase them – they use these services to move their own belongings. Thus, it is also clear that no more than 25

6

percent of Road Runner's services are resold and the third requirement for retail or service establishment is met.

### 3. The Regular Rate of Pay of Plaintiffs Was in Excess of One and One Half Time The Minimum Hourly Rates Applicable to Them.

The second element of the retail sales exemption requires that the regular rate of pay of the employees will be in excess of one and one-half times the minimum hourly rate applicable to them under 29 U.S.C. §206.

Here, the commission records of the Plaintiffs, coupled with their time entries demonstrate that this element is met. The minimum hourly wage rate in Florida was $8.46 in 2019 and $8.56 in 2020. Thus, time and a half these rates equals $12.69 and $12.84, respectively.

Regarding the burden of production, "an employee 'has the burden of proving that he performed work for which he was not properly compensated.'" See, *Arroyave v. Rossi*, 296 F. App'x 835, 835 (11th Cir. 2008) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688 (1946)) "When the employer has kept accurate records detailing the employee's hours and compensation rate, the employee discharges his burden by securing the production of those records." *Estrada,* Id*.* at *6-7. "However, if the employer's records are inaccurate or inadequate, the court should apply a relaxed burden-shifting scheme." *Id*. "In such a situation, an employee has 'carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" *Id*. (citing *Allen*, 495 F.3d at 1316) "The burden then shifts to the employer, who must submit evidence of either the precise amount of work the employee performed or 'evidence to negate the reasonableness of the inference to be drawn from the employee's evidence.'" *Id*.

Here, Road Runner has produced Plaintiffs' contemporaneous time records as ***Ex. D*** and ***Ex. E***. (including their daily clock-ins and clock-outs) that were generated by Road Runner's system as well as corresponding pay records for the Plaintiffs. It is, thus, Plaintiffs' burden to show that these records are inaccurate **and** that Road Runner knew of the inaccuracy. In the absence of evidence to that effect, Plaintiffs cannot simply argue with these records.

Addressing each of the Plaintiffs' claims individually, Mr. Dahdouh received his pay from Road Runner by check made payable to his entity Trendies Place Corp. Copies of all checks paid to Mr. Dahdouh through his company are attached as ***Composite Ex. F***. As these records indicate, Plaintiff's pay was not regular on the same day of the week. Because Plaintiff was paid on a commission basis, his pay vested only when deals he secured were funded and also reflected cancellations of paid services previously done and paid. See, ***Ex. A***., *Declaration of John Mather*, ¶14. Thus, there were circumstances and weeks in which Plaintiff received pay also for work he has done in previous weeks, that were not paid until after the potential customers became customers and commissions could be calculated.

For instance, while Mr. Dahdouh's time records show that he worked for Road Runner starting November 3, 2019, his first check (a $300.00 draw) was not issued until November 18, 2019.

Mr. Dahdouh's time and pay records (From ***Ex. D*** and ***Composite Exhibit F***) are summarized listed in the following table:

| Week | Dates | Hours Worked | MW Value (Hrs. x MW) | Total Hours x 1.5 MW | Actual Pay | Date(s) of Payment(s) |
|---|---|---|---|---|---|---|
| 1 | 11/3/19-11/9/19 | 16 | $135.36 | No OT | $300.00 | 11/18/19 |
| 2 | 11/10/19-11/16/19 | 39.75 | $336.29 | No OT | $436.12 | 11/25/19 |

8

| 3  | 11/17/19-11/23/19 | 32.75 | $277.07 | No OT | $319.93 | 12/2/19 |
| 4  | 11/24/19-11/30/19 | 42 | $355.32 | $532.98 | $1,687.86 | 12/9/19 |
| 5  | 12/1/19-12/7/19 | 37.5 | $313.02 | No OT | $2,354.32 | 12/16/19 |
| 6  | 12/8/19-12/14/19 | 38.5 | $325.71 | No OT | $1,529.41 | 12/23/19 |
| 7  | 12/15/19-12/21/19 | 38.75 | $327.83 | No OT | $1,014.92 | 12/27/19 12/30/19 |
| 8  | 12/22/19-12/28/19 | 41.75 | $353.21 | $529.81 | $585.72 | 1/6/20 |
| 9  | 12/29/19-1/4/20 | 40 | $342.40 | No OT | $2,167.85 | 1/13/20 |
| 10 | 1/5/20-1/11/20 | 45.5 | $389.49 | $584.22 | $823.33 | 1/20/20 |
| 11 | 1/12/20-1/18/20 | 43 | $368.08 | $552.12 | $1,027.58 | 1/27/20 |
| 12 | 1/19/20-1/25/20 | 42.5 | $363.80 | $545.70 | $1,334.86 | 2/3/20 |
| 13 | 1/26/20-2/1/20 | 47.75 | $408.74 | $613.11 | $2,169.96 | 2/10/20 |
| 14 | 2/2/20-2/8/20 | 38 | $325.28 | No OT | $842.91 | 2/17/20 |
| 15 | 2/9/20-2/15/20 | 40.75 | $348.82 | $523.23 | $1,102.67 | 2/24/20 |
| 16 | 2/16/20-2/22/20 | 53.5 | $457.96 | $686.94 | $1,708.08 | 3/2/20 |
| 17 | 2/23/20-2/29/20 | 30 | $256.80 | No OT | $532.21 | 3/9/20 |
| 18 | 3/1/20-3/7/20 | 41 | $350.96 | $526.44 | $759.78 | 3/16/20 |
| 19 | 3/8/20-3/14/20 | 0 | N/A | N/A | $556.27 | 3/23/20 |
| 20 | 3/15/20-3/21/20 | 36.75 | | No OT | $560.54 | 3/30/20 |
| 21 | 3/22/20-3/28/20 | Time Not Reported | | | $869.74 | 4/6/20 |
| 22 | 3/29/20-4/4/20 | Time Not Reported | | | $628.92 | 4/13/20 |
| 23 | 4/5/20-4/11/20 | Time Not Reported | | | $641.38 | 4/20/20 |
| 24 | 4/12/20-4/18/20 | Time Not Reported | | | $1,766.96 | 4/27/20 |
| 25 | 4/19/20-4/25/20 | Time Not Reported | | | $1,704.99 | 5/4/20 |

| 26 | 4/26/20-5/2/20 | Time Not Reported | | | $579.73 | 5/11/20 |

As this table demonstrates (based on the records provided), there is not a single week for which Mr. Dahdouh is owed overtime or minimum wage because in all weeks he either: 1) did not work more than 40 hours in some weeks but received more than minimum wage, 2) worked more than 40 hours but received more than 1.5 times the minimum wage for all hours worked and is exempt, or 3) did not report his hours to Road Runner in the last six weeks in which it also appears that there is no violation.

Just like Mr. Dahdouh, Mr. Morales, too, received his commissions by check on a weekly basis (but delayed in order for commissions to be calculated). See, ***Ex. C***, *Morales Depo. Trans.,* 58:7-18. He deposited his checks into his bank account. *Id*. Copies of all check stubs paid to Mr. Morales are attached as ***Composite Ex. G***. These check stubs are corroborated by the bank deposit records of Mr. Morales. ***Composite Ex. H***.

Mr. Morales's time and pay records (From ***Ex. E*** and ***Composite Ex. G***) are summarized listed in the following table:

| Week | Dates | Hours Worked | MW Value (Hrs. x MW) | Total Hours x 1.5 MW | Actual Pay | Date(s) of Payment(s) |
|---|---|---|---|---|---|---|
| 1 | 8/11/19-8/17/19 | 39 | $329.94 | No OT | $1,100.00 | 8/20/19 8/26/19 |
| 2 | 8/18/19-8/24/19 | 42.75 | $361.67 | $542.50 | $1,927.72 | 8/30/19 |
| 3 | 8/25/19-8/31/19 | 7.75 | $65.57 | No OT | $659.53 | 9/9/19 |
| 4 | 9/1/19-9/7/19 | 32.75 | $277.07 | No OT | $600.00 | 9/16/19 |
| 5 | 9/8/19-9/14/19 | 42.5 | $359.55 | $539.33 | $916.67 | 9/23/19 |
| 6 | 9/15/19-9/21/19 | 32.5 | $274.95 | No OT | $556.79 | 9/30/19 |
| 7 | 9/22/19-9/28/19 | 36.5 | $308.80 | No OT | $925.96 | 10/7/19 |

| 8 | 9/29/19-10/5/19 | 37.75 | $319.37 | No OT | $200.00 $862.35 | 10/3/19 10/14/19 |
|---|---|---|---|---|---|---|
| 9 | 10/6/19-10/12/19 | 36.5 | $308.80 | No OT | $500.10 | 10/21/19 |
| 10 | 10/13/19-10/19/19 | 31.75 | $268.81 | No OT | $500.00 | 10/28/19 |
| 11 | 10/20/19-10/26/19 | 41.25 | $348.98 | $523.46 | $1,245.00 | 11/4/19 |
| 12 | 10/27/19-11/2/19 | 41.75 | $353.21 | $529.81 | $2,744.00 | 11/11/19 |
| 13 | 11/3/19-11/9/19 | 14.5 | $122.67 | No OT | $1,162.52 | 11/18/19 |
| 14 | 11/10/19-11/16/19 | 0 | N/A | N/A | $237.18 | 11/25/19 |
| 15 | 11/17/19-11/23/19 | 25.75 | $217.85 | No OT | $500.00 | 12/2/19 |
| 16 | 11/24/19-11/30/19 | 35.75 | $302.45 | No OT | $793.87 | 12/9/19 |
| 17 | 12/1/19-12/7/19 | 32.75 | $277.07 | No OT | $1,136.86 | 12/16/19 |
| 18 | 12/8/19-12/14/19 | 34.25 | $289.76 | No OT | $732.19 | 12/23/19 |
| 19 | 12/15/19-12/21/19 | 33.25 | $281.30 | No OT | $688.21 | 12/30/19 |
| 20 | 12/22/19-12/28/19 | 15.8 | $133.67 | No OT | $423.75 | 1/6/20 |
| 21 | 12/29/19-1/4/20 | 32.25 | $276.06 | No OT | $723.83 | 1/13/20 |
| 22 | 1/5/20-1/11/20 | 40.75 | $348.82 | $523.23 | $885.00 | 1/21/20 1/21/20 |
| 23 | 1/12/20-1/18/20 | 39.5 | $338.12 | No OT | $880.89 | 1/27/20 |
| 24 | 1/19/20-1/25/20 | 40.5 | $346.68 | $520.02 | $61.36 | 2/3/20 |
| 25 | 1/26/20-2/1/20 | 8 | $68.45 | No OT | $712.40 | 2/10/20 |

As this table demonstrates (based on the records provided), with the exception of the second to last week, there is not a single week for which Mr. Morales is owed overtime or minimum wage because in all weeks he either: 1) did not work more than 40 hours in some weeks but received more than minimum wage, or 2) worked more than 40 hours but received more than 1.5 times the minimum wage for all hours worked and is exempt.

11

### 4. **More Than Half of Plaintiffs' Compensation was Derived Off of Commissions on Goods or Services**

The third element of the retail sales exemption requires that more than half of the employee's compensation for a representative period (not less than one month) represents commissions on goods or services.

As the evidence on record clearly shows, both Mr. Dahdouh and Mr. Morales worked in sales for Road Runner. ***Ex. B**., Dahdouh Depo. Trans.,* 81:13-19; ***Ex. C**., Morales Depo. Trans.,* 57:1-6. Their income from Road Runner consisted entirely of commissions earned. ***Ex. B**., Dahdouh Depo. Trans.,* 49:11-16; 81:3-5; ***Ex. C**., Morales Depo. Trans.,* 54:17-20; 58:3-6; ***Ex. A**., Declaration of John Mather*, ¶13.

Given all the evidence on record, it is clear that Plaintiffs' pay was consisted of not merely more than 50% off of commissions, but *entirely* off of commissions.

### c. **Time Plaintiffs Claim to Have Worked Away from Road Runner's Facility and But Failed to Report to Road Runner is Not Compensable**

Both Mr. Dahdouh and Mr. Morales, as other sales personnel were required to, and did work, primarily from Road Runner's facility. ***Ex. A**., Declaration of John Mather*, ¶4. Plaintiffs were not provided with a set schedule by Road Runner. ***Ex. B**., Dahdouh Depo. Trans.,* 89:6-7 and made their own schedule. ***Ex. B**., Dahdouh Depo. Trans.,* 89:10-11.

When sales personnel worked, it was Road Runner's policy to require them to clock in and to clock out. ***Ex. A**., Declaration of John Mather*, ¶7. Mr. Dahdouh and Mr. Morales's clock in and out records are attached as ***Ex. D.*** and ***Ex. E**.*, respectively. However, both also stated that they used their cell phones to conduct business on their own time away from Road Runner's facility in order to generate more sales. ***Ex. C**., Morales Depo. Trans.,* 107:19-24. In fact, Mr. Dahdouh admitted that he did not work at Road Runner's facility **at all** after the COVID-19

pandemic started. Instead, he claims to have worked from his apartment until May, 2020. ***Ex. B**., Dahdouh Depo. Trans.,* 39:23-25; 132:14 – 133:18

However, Mr. Dahdouh never reported his time working from home or away from Road Runner's facility to any of the Defendants. ***Ex. B**., Dahdouh Depo. Trans.,* 130:25 – 131:5; 133:16-18. Without receiving any time reports from Mr. Dahdouh, Defendants had no ability to know how many hours he did or did not work during that time because it was not done in Road Runner's facility. Under such circumstances, Mr. Dahdouh is estopped from claiming overtime for that time period. See, e.g., *Allen v. Board of Public Education for Bibb County*, 495 F.3d 1306, 1319 (11th Cir. 2007) (stating that "[t]here is no violation of the FLSA where the employee performs compensated work but deliberately prevents his or her employer from learning of it."); *Carro v. Integrated Tech Grp., LLC*, No. 14-23788, 2015 U.S. Dist. LEXIS 148776, at *19 (S.D. Fla. Nov. 3, 2015) ("Thus, to the extent Carro, or any of the other Plaintiffs, deliberately and voluntarily under-reported his time, ITG is entitled to summary judgment.")

Likewise, both Mr. Dahdouh and Mr. Morales are estopped from claiming overtime in reliance on text messages, or phone calls they purportedly made while not in Road Runner's facility and while not apprising Road Runner of their work.

Without knowing how many hours Plaintiffs claim to have worked away from Road Runner's facility, how can Road Runner (or any other Defendant) be responsible for not paying that time?

Finally, Plaintiffs have failed to produce admissible evidence showing that they actually worked more than the hours clocked in or out for them.

## **CONCLUSION**

Because the evidence on the record clearly demonstrates that Plaintiffs were not paid less than minimum wage in any week, did not work more than forty hours in most weeks, and were subject to the Retail Sales Exemption of the FLSA in the weeks in which they did, Defendants are entitled to summary judgment in their favor. Further, to the extent Plaintiffs rely on uncorroborated time that was also not reported to any of the Defendants in order to maintain their claims, they are not entitled to relief under the FLSA for such time as a matter of law because the Defendants were not aware of such time.

Respectfully submitted, this 28th day of May, 2021.

> ADI AMIT, P.A.
> *Attorneys for Defendants*
> 101 Centre
> 101 NE Third Avenue, Suite 300
> Fort Lauderdale, Florida 33301
> Phone: (954) 533-5922
> E-mail: adi@defenderofbusiness.com
>
> By: *s/Adi Amit*
> Adi Amit, Esquire
> Florida Bar No. 35257

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 28, 2021, I electronically filed the foregoing document with the clerk of the court using CM/ECF. I also certify that the foregoing document is being served this day to all persons on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

> By: /s *Adi Amit*
> Adi Amit, Esquire
> Florida Bar No: 35257

## SERVICE LIST

*Roland Raouf Dahdouh, et al. v. Road Runner Moving And Storage, Inc., et al.*
S.D. Fla. Case No. 0:20-cv-61936-RAR

| | |
|---|---|
| Elliot Kozolchyk, Esquire | Adi Amit, Esquire |
| Koz Law, P.A. | ADI AMIT, P.A. |
| 320 S.E. 9TH Street | 101 Centre |
| Fort Lauderdale, FL 33316 | 101 NE Third Ave., Suite 300 |
| ekoz@kozlawfirm.com | Ft. Lauderdale, Florida 33301 |
| *Counsel for Plaintiffs* | Adi@defenderofbusiness.com |
| | *Counsel for Defendants* |