## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 20-CV-61936-RUIZ/STRAUSS

**ROLAND RAOUF DAHDOUH,** *et al.*,

Plaintiffs,

v.

**ROAD RUNNER MOVING
AND STORAGE INC.,** *et al.*,

Defendants.

_____/

## REPORT AND RECOMMENDATION

THIS MATTER came before the Court upon Defendants' Motion for Summary Judgment ("Motion") [DE 102].  The Motion was referred to me to take all necessary and proper action as required by law [DE 119].  I have reviewed the Motion, the Response [DE 114] and Reply [DE 120] thereto, all other summary judgment materials, and all other pertinent portions of the record.  For the reasons discussed herein, I respectfully **RECOMMEND** that the Motion [DE 102] be **DENIED**.

## BACKGROUND

Plaintiffs commenced this action under the Fair Labor Standards Act ("FLSA") on September 23, 2020.  In their Second Amended Complaint, Plaintiffs allege that Defendants failed to pay them minimum wage for certain hours worked as well as overtime pay for certain hours worked in excess of forty hours per week.  [DE 70] ¶¶ 13-14.  Defendants deny any liability and raise certain defenses, including that an FLSA exemption applicable to retail or service establishments – under 29 U.S.C. § 207(i) – bars Plaintiffs' overtime claims.  *See* [DE 72].

Defendant, Road Runner Moving and Storage, Inc. ("Road Runner"), is a moving company that provides moving services to the general public. Defendants' Statement of Material Undisputed Facts for Summary Judgment Purposes ("DEF Stmt.") [DE 102-1] ¶ 1 (undisputed).[1] Road Runner earns all of its revenue from moving services it provides to the general public and from incidental sales of moving supplies. *Id.* ¶ 2 (undisputed). Road Runner's services are sold directly to customers and are not sold in bulk. *Id.* ¶ 3.

Plaintiffs worked for Road Runner as salesmen. *Compare id.* ¶¶ 4-5 *with* Plaintiffs' Response to Defendants' Statement of Material Facts ("PL Stmt.") [DE 115] ¶¶ 4-5. Plaintiff, Roland Dahdouh ("Dahdouh") worked for Road Runner from around November 4, 2019 until around May 13, 2020, working remotely for approximately the last 2 months. *See* DEF Stmt. ¶¶ 4, 25; PL Stmt. ¶¶ 4, 25. Plaintiff, Alejandro Morales ("Morales"), worked for Road Runner from either August or November of 2019 until January or February of 2020. *See* DEF Stmt. ¶ 5; PL Stmt. ¶ 5. Both Plaintiffs were paid on commission (by check). DEF Stmt. ¶¶ 6-7 (undisputed). The dates and amounts of all payments made to Plaintiffs, and the workweek to which each check applies, are undisputed. *See id.* ¶¶ 8-12 (undisputed); Motion at 8-11; Response at 11-13.[2]

## **LEGAL STANDARD**

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

---

[1] Defendants contend that Plaintiffs worked for Road Runner but not the other defendant entities. Plaintiffs, however, contend that they worked for all of the defendant entities and that the defendant entities are a single enterprise and joint employer under the FLSA. Regardless of which party is correct, this dispute has no impact on the issues raised Motion. For ease of reference, however, I will generally refer to Road Runner as Plaintiffs' employer in this Report as paragraph 1 of the DEF Stmt., which is undisputed, only refers to Road Runner and not the other defendant entities.

[2] In the Response, Plaintiffs say they assume, without conceding, this information. Response at 11. However, they never actually dispute it (even if they do not expressly concede it).

Civ. P. 56(a).  "An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007) (citing *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir.1996)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018) (internal quotation marks omitted) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Initially, it is the moving party's "burden to demonstrate the basis for its motion, and [it] must identify the portions of the record 'which it believes demonstrates the absence of a genuine issue of material fact.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "The movant may meet this burden by demonstrating that the nonmoving party has failed to present sufficient evidence to support an essential element of the case." *Id.* (citing *Celotex*, 477 U.S. at 322-23). *See also Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (The movant may satisfy its burden "by 'showing' or 'pointing out' to the Court that there is an absence of evidence to support the non-moving party's case." (citing *Celotex*, 477 U.S. at 325)).  Provided that the moving party meets its burden, the burden then shifts to the non-moving party to show that a genuine issue of material fact exists. *Hornsby-Culpepper*, 906 F.3d at 1311-12.

To establish a dispute of fact sufficient to avoid the entry of summary judgment, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *A.L. ex rel. D.L. v. Walt Disney Parks & Resorts US, Inc.*, 900 F.3d 1270, 1289 (11th Cir. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "However, a mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." *Kesinger ex rel. Estate of Kesinger v. Herrington*, 381

F.3d 1243, 1247 (11th Cir. 2004) (citing *Anderson*, 477 U.S. 242).  Nevertheless, courts "must

view all the evidence and all factual inferences reasonably drawn from the evidence in the light

most favorable to the nonmoving party." *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117

F.3d 1278, 1285 (11th Cir. 1997) (citation omitted).  Moreover, all reasonable doubts regarding

the facts must be resolved in favor of the non-moving party. *Rioux v. City of Atlanta, Ga.*, 520

F.3d 1269, 1274 (11th Cir. 2008) (citation omitted).

## ANALYSIS

"The [FLSA] requires employers to pay overtime compensation to employees who work

more than forty hours in a single week." *Freixa v. Prestige Cruise Servs., LLC*, 853 F.3d 1344,

1346 (11th Cir. 2017) (citing 29 U.S.C. § 207(a)(1)).  However, the FLSA contains various

exemptions from this overtime requirement including one that applies to employment by retail or

service establishments when certain conditions are met, which Defendants argue is the case here.

Specifically, 29 U.S.C. § 207(i) provides, in pertinent part, the following:

> No employer shall be deemed to have violated subsection (a) by employing any
> employee of a retail or service establishment for a workweek in excess of the
> applicable workweek specified therein, if (1) the regular rate of pay of such
> employee is in excess of one and one-half times the minimum hourly rate applicable
> to him under section 206 of this title, and (2) more than half his compensation for
> a representative period (not less than one month) represents commissions on goods
> or services.

§ 207(i).[3]  Thus, for an employer to successfully invoke this exemption, it must establish the

following elements: (1) the employer is a retail or service establishment; (2) the employee's regular

---

[3] *See also Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1147 (2018) (Ginsburg, J.,
dissenting) ("The FLSA exempts from its overtime directives any employee of a 'retail or service
establishment' who receives more than half of his or her pay on commission, so long as the
employee's 'regular rate of pay' is more than 1 ½ times the minimum wage." (citing § 207(i)));
*Freixa*, 853 F.3d at 1346 ("The Act relieves an employer of this [overtime] requirement for any
employee of a retail or service establishment 'if (1) the regular rate of pay of such employee is in
excess of one and one-half times the minimum hourly rate applicable to him . . ., and (2) more than

rate of pay exceeds 1.5 times the minimum wage; and (3) more than half of the employee's compensation for a representative period represents commissions on goods or services. *Compere v. Nusret Miami, LLC*, No. 19-CV-20277, 2020 WL 4464627, at *4 (S.D. Fla. May 31, 2020) (citing § 207(i)). This exemption only applies to overtime obligations. *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1038 (4th Cir. 2020). It is an employer's burden to demonstrate that an FLSA exemption applies. *Ramirez v. Statewide Harvesting & Hauling, LLC*, 997 F.3d 1356, 1359 (11th Cir. 2021) (citing *Pioch v. IBEX Eng'g Servs., Inc.*, 825 F.3d 1264, 1268 (11th Cir. 2016)). Courts must fairly read and interpret FLSA exemptions rather than narrowly construing them against an employer. *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018); *Ramirez*, 997 F.3d at 1359.[4]

Here, the parties dispute whether the first two elements of the exemption are satisfied. The third element, however, is not in dispute. As discussed herein, Defendants have failed to demonstrate that Road Runner qualifies as a retail or service establishment. In other words, a reasonable jury could find that Road Runner is not a retail or service establishment and, thus, that the first element of the exemption is not satisfied. Additionally, genuine issues of material fact exist with respect to whether the second element is satisfied. Those same factual issues, which concern the number of hours Plaintiffs worked, also preclude summary judgment on Plaintiffs' minimum wage claims (to the extent the Motion even adequately raises the minimum wage issue). *See infra* note 10.

---

half of his compensation for a representative period (not less than one month) represents commissions on goods and services.'" (quoting § 207(i))).

[4] Prior to the Supreme Court's 2018 *Encino Motorcars* decision, courts narrowly construed FLSA exemptions. *See Encino Motorcars*, 138 S. Ct. at 1142; *Ramirez*, 997 F.3d at 1359.

## I.     RETAIL OR SERVICE ESTABLISHMENT

Defendants have failed to show Road Runner is a retail or service establishment.  Section 207(i) does not define "retail or service establishment."  However, "courts across the country have continued to apply a long-since repealed definition previously codified at 29 U.S.C. § 213(a)(2)." *Lopez v. Triangle Fire, Inc.*, No. 15-22209-CIV, 2017 WL 2272057, at *3 (S.D. Fla. May 23, 2017) (citing *Reich v. Delcorp, Inc.*, 3 F.3d 1181, 1183 (8th Cir. 1993)).  "The repealed statute defined a retail or service establishment as an establishment '75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and [is] recognized as retail sales or services in the particular industry.'"  *Id.* (citing § 213(a)(2)).  *See also Contreras v. Aventura Limousine & Transportation Serv., Inc.*, No. 13-22425-CIV, 2014 WL 11880993, at *6 & n.4 (S.D. Fla. June 30, 2014) (referencing same definition and noting that it continues to apply for purposes of § 207(i)); *Gieg v. DDR, Inc.*, 407 F.3d 1038, 1047 (9th Cir. 2005) ("Although § 213(a)(2) was later repealed, courts have continued to apply its definition of 'retail or service establishment' to Section 207(i)." (citing *Reich*, 3 F.3d at 1183)).[5]  Defendants note that 29 C.F.R. § 779.313 summarizes the requirements that an employer must establish to show that it is a "retail or service establishment."  *See* Motion at 5.  Specifically, the establishment:

> (a) Must engage in the making of sales of goods or services; and (b) 75 percent of its sales of goods or services, or of both, must be recognized as retail in the particular industry; and (c) not over 25 percent of its sales of goods or services, or of both, may be sales for resale.

---

[5] Both the Eighth and Ninth Circuits (in *Reich* and *Gieg*, respectively) and district courts in this circuit (including in *Lopez* and *Contreras*) have applied the § 213(a)(2) definition of "retail or service establishment" to § 207(i) notwithstanding the repeal of § 213(a)(2).  However, the Seventh Circuit has persuasively cast doubt on the use of the § 213(a)(2) definition in the § 207(i) context. *See Alvarado v. Corp. Cleaning Servs., Inc.*, 782 F.3d 365, 369 (7th Cir. 2015).  Nonetheless, because both parties (and most courts) use the § 213(a)(2) definition, I will do so as well here.

29 C.F.R. § 779.313.  Furthermore, to come within the definition, the establishment must have a "retail concept."  29 C.F.R. § 779.316.

In responding to the Motion, Plaintiffs argue that Defendants have not satisfied these requirements because over 25% of Road Runner's sales were sales for resale and because Road Runner lacks a "retail concept."[6]  It is unclear whether Plaintiffs are also arguing that Defendants have not shown that at least 75% of Road Runner's sales are recognized as retail in the particular industry.  In any event, I agree that Defendants have failed to show that the "retail or service establishment" definition (which both parties use) is satisfied as a matter of law.  That is because Defendants have failed to put forward evidence regarding the percentages of Road Runner's sales that are recognized as retail in the industry and that are sales for resale.  While Defendants' Reply notes that Plaintiffs did not conduct discovery regarding these issues and that they have not submitted adequate evidence regarding these issues, Defendants overlook the fact that it is Defendants' burden to demonstrate that the exemption applies.  But they failed to satisfy that burden by not providing evidence to show that the requisite retail/resale sales percentages are

---

[6] Plaintiffs also argue that for an establishment to qualify as a retail or service establishment, more than 50% of its sales must be intrastate, which Plaintiffs contend is not the case for Road Runner. However, this 50% intrastate requirement does not apply to the § 207(i) exemption because it is not part of the definition of "retail or service establishment."  The 50% intrastate requirement comes from § 213(a)(2), but not the part of § 213(a)(2) that defined "retail or service establishment."  Specifically, "[p]rior to being repealed in November 1989, § 213(a)(2) excluded from minimum wage and overtime pay:"

> [A]ny employee employed by any retail or service establishment . . . if more than 50 per centum of such establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located, and such establishment is not in an enterprise described in section 203(s)(5) of this title. *A "retail or service establishment" shall mean* an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry.

*Gieg*, 407 F.3d at 1047 (emphasis added).

satisfied.  *See Lopez*, 2017 WL 2272057, at *4 ("Defendants have failed to meet their burden of proving the applicability of the exemption because the record does not establish precise percentages of dollar volume attributable to sales which could properly be designated as retail sales.").

While Defendants appear to *imply* – without expressly stating – that 100% of Road Runner's sales are recognized as retail and that 0% of its sales are sales for resale, Plaintiffs' declarations arguably refute that implication by showing, at the very least, that other moving companies carry out at least some of the moving services sold by Road Runner.  *See* Declaration of Roland Raouf Dahdouh ("Dahdouh Decl.") [DE 115-2] ¶¶ 10-16; Declaration of Alejandro Morales ("Morales Decl.") [DE 115-3] ¶¶ 9-15.  It is true, as Defendants indicate in their Reply, that Plaintiffs do not provide evidence to directly show that Defendants cannot satisfy the 75% and 25% requirements under subsections (b) and (c) of 29 C.F.R. § 779.313.  But what Plaintiffs do provide may be sufficient to refute Defendants' 100% and 0% implications, and again, Defendants failed to provide evidence of retail/resale percentages in the first instance notwithstanding their burden to do so.  In fact, Defendants were required to meet their burden "plainly and unmistakably."  *Schultz v. Instant Handling, Inc.*, 418 F.2d 1019, 1024 (5th Cir. 1969).  But I cannot conclude they have given the limited facts they provided regarding Road Runner's business and sales.  Even putting the issue of percentages aside, Defendants have done nothing to prove that Road Runner's sales are "recognized as retail" in the industry.  The parties have also failed to cite case law that specifically analyzes these particular retail/resale issues.  Moreover, I note that

Defendants failed to reply to the additional facts in the PL Stmt. as required under Local Rule 56.1.[7]  In any event, as discussed herein, other issues preclude summary judgment regardless.

Summary judgment is also inappropriate because, viewing the facts and reasonable inferences in the light most favorable to Plaintiffs (as non-moving parties), a reasonably jury could find that Road Runner does not have a "retail concept."   While this retail-concept issue is determined on a case-by-case basis, courts have looked to Department of Labor regulations for guidance.  *See Contreras*, 2014 WL 11880993, at *6; *Ebersole v. Am. Bancard, LLC*, No. 08-80703-CIV-MARRA, 2009 WL 2524618, at *3 (S.D. Fla. Aug. 17, 2009).  As one such regulation explains:

> Typically a retail or service establishment is one which sells goods or services to the general public. It serves the everyday needs of the community in which it is located. The retail or service establishment performs a function in the business organization of the Nation which is at the very end of the stream of distribution, disposing in small quantities of the products and skills of such organization and does not take part in the manufacturing process. . . . Such an establishment sells to the general public its food and drink. It sells to such public its clothing and its furniture, its automobiles, its radios and refrigerators, its coal and its lumber, and other goods, and performs incidental services on such goods when necessary. It provides the general public its repair services and other services for the comfort and convenience of such public in the course of its daily living. Illustrative of such establishments are: Grocery stores, hardware stores, clothing stores, coal dealers, furniture stores, restaurants, hotels, watch repair establishments, barber shops, and other such local establishments.

29 C.F.R. § 779.318.

Viewing the facts and reasonable inferences in the light most favorable to Plaintiffs, Road Runner frequently acts as a middleman by selling services to customers that other companies carry out (it is unclear whether or not these other companies are subcontractors of Road Runner).

---

[7] *See* S.D. Fla. L.R. 56.1(a)(3) ("The movant shall respond to any additional facts asserted in the opponent's Statement of Material Facts even if the movant does not serve a reply memorandum."); S.D. Fla. L.R. 56.1(c) (material facts in a statement of facts are deemed admitted when not controverted by the opposing party's statement of facts, absent certain exceptions).

Moreover, these services are often not provided locally.  Thus, while Road Runner sells services to the general public, it does not serve the everyday needs of the community in which it is located, and it is often not at the end of the stream of distribution (when other companies provide the moving services, provided they are not subcontractors of Road Runner).  Road Runner certainly does not provide "services that are *frequently* acquired for family or personal use."  *See Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190, 203 (1966) (emphasis added) ("Plainly the typical retail transaction is one involving goods or services that are frequently acquired for family or personal use.").  By way of comparison, in *Contreras*, the court found that the retail or service establishment exemption did not apply, noting that the employer provided chauffeured limousine and transportation services, services that do not serve the everyday needs of the community but are instead infrequently utilized by most people.  2014 WL 11880993, at *6.  *See also Diggs v. Ovation Credit Servs., Inc.*, 449 F. Supp. 3d 1280, 1289 (M.D. Fla. 2020) (recognizing that credit repair services are not "services for the comfort and convenience of such public in the course of its daily living").  Although the court in *Contreras* noted that FLSA exemptions were narrowly construed (which is no longer the case), *Contreras* is nevertheless instructive because like the services at issue there, moving services do not serve the *everyday* needs of the community.  Therefore, at the very least, I cannot conclude that no reasonable jury could find for Plaintiffs on this retail-concept issue.

Defendants have not shown that Road Runner has a retail concept, that at least 75% of Road Runner's sales are recognized as retail in the industry (assuming Plaintiffs even adequately raised this issue in their Response), or that no more than 25% of Road Runner's sales are sales for resale.  In other words, a reasonable jury could find for Plaintiffs on these issues.  Therefore,

Defendants have failed to meet their burden of showing that the retail or service establishment exemption applies.

## II.     REGULAR RATE OF PAY/HOURS WORKED

Although the Motion should be denied (on the exemption issue) because Defendants have not shown that Road Runner qualifies as a retail or service establishment, it should also independently be denied because genuine disputes of material fact exist with respect to whether Plaintiffs' regular rates of pay exceeded 1.5 times the minimum wage, which is $10.88 per hour. *See Freixa*, 853 F.3d at 1346 (recognizing that the exemption threshold is $10.88 per hour).  *See also Wai Man Tom*, 980 F.3d 1027 at 1032 ("Overtime compensation must be 'at a rate not less than one and one-half times the regular rate at which [a covered employee] is employed'—at least $10.88 per hour." (quoting 29 U.S.C. § 207(a)(2)(C))).  The FLSA "contemplates the employment of a person 'for *a* workweek.'"  *Freixa*, 853 F.3d at 1346.  Thus, "[t]he regular rate [of pay] is determined by dividing the . . . total compensation *during the workweek* by the number of hours worked."  *Id.* (quoting *Klinedinst v. Swift Invs., Inc.*, 260 F.3d 1251, 1256 (11th Cir. 2001)).

Here, the parties dispute whether Plaintiffs received at least $10.88 per hour during each workweek.  On the one hand, Defendants reference Road Runner's time and payroll records, which show that Plaintiffs received at least $10.88 per hour for all reported hours.  *See* DEF Stmt. ¶¶ 11-12 (undisputed), 18-19 (disputed); [DE 102-5 – DE 102-9].  On the other hand, Plaintiffs state under oath that Defendants' records do not accurately reflect the hours that they worked for several reasons, including that Plaintiffs worked from home after hours and that Dahdouh worked remotely during his last two months of employment, which Plaintiffs assert Defendants knew.  *See* Dahdouh Decl. ¶¶ 4, 6-9; Morales Decl. ¶¶ 5-8.  Plaintiffs also attempt to approximate the number of hours they contend that they did work each week during their employment.  *See* Dahdouh Decl.

¶ 7; Morales Decl. ¶ 6.  If believed, Plaintiffs' testimony shows that they did not receive at least $10.88 per hour during each workweek.  *See* Response at 12-13 (reflecting weeks where, based on Plaintiffs' approximation of hours, rate fell below $10.88 per hour).  Therefore, as discussed herein, the resolution of this issue turns on the trustworthiness of Road Runner's time records and whether Road Runner knew or should have known that Plaintiffs worked hours not reflected in the time records.

Under the FLSA, an employee has "the burden of proving that he performed work for which he was not properly compensated." *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1315 (11th Cir. 2013) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946)).  However, "[i]t is the employer's duty to keep records of the employee's wages, hours, and other conditions and practices of employment." *Allen*, 495 F.3d at 1315 (citing *Anderson*, 328 U.S. at 687).  If the employer fails to keep time records, or if the employer's time records are inaccurate or untrustworthy, the employee's burden is relaxed. *Lamonica*, 711 F.3d at 1315; *Allen*, 495 F.3d at 1316.  In such a situation,

> an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Lamonica*, 711 F.3d at 1315 (quoting *Anderson*, 328 U.S. at 687-88).  *See also Morgan v. Fam. Dollar Stores, Inc.*, 551 F.3d 1233, 1279 (11th Cir. 2008) ("Where employer payroll records are inadequate, litigants can only approximate the number of hours worked and the amount of pay due. In such cases, the answer requires a numerical estimate of hours and pay.").

Here, Road Runner maintained time records, but Plaintiffs argue that the records are fraudulent.  *See* DEF Stmt. ¶¶ 16-22 (disputed); Response at 7.  Even assuming that Plaintiffs have not put forward sufficient evidence to adequately dispute that Road Runner's records accurately reveal the time Plaintiffs worked *in-person* at Road Runner's place of business (which is unclear),[8] the evidence viewed in the light most favorable to Plaintiffs shows that Plaintiffs continued working after hours outside of Road Runner's facility and that such hours would not be reflected in Road Runner's records.  *See* Dahdouh Decl. ¶¶ 7-9; Morales Decl. ¶¶ 6-8.  Thus, Plaintiffs' statements, which provide details regarding their continued work after hours, call into question the completeness of the time records Road Runner maintains.[9]  *Cf. Dierdorf v. Advanced Motion Therapeutic Massage, Inc.*, No. 19-CIV-62609-RAR, 2021 WL 65067, at *3 (S.D. Fla. Jan. 6, 2021) ("In his deposition testimony, Plaintiff detailed how he was required to chart patient records from home and was not paid for this time. This alone weighs heavily towards calling the accuracy of the timesheets into question." (internal citations omitted)).

---

[8] Plaintiffs dispute that Road Runner had a policy requiring employees to clock in and out, and Plaintiffs claim that they did not use (and were not required to use) the ITIMEPUNCHPLUS software that Road Runner states employees were required to use.  *See* Dahdouh Decl. ¶ 6, Morales Decl. ¶ 5.  However, Plaintiffs do not directly contend that they did not actually clock in and out when at Road Runner's business location.  In fact, Morales even acknowledged that "[d]uring certain periods, I recorded my time in and time out on a spreadsheet."  [DE 120-3] at No. 5.

[9] Plaintiffs separately argue that Defendants failed to comply with a whole host of recordkeeping regulations that they were required to follow in order to be eligible for the exemption at issue.  *See* Response at 10-11.  However, contrary to Plaintiffs' argument, "courts that have addressed this issue have concluded that recordkeeping flaws do not make the exemption unavailable to non-compliant employers, provided that they satisfy the statutory elements."  *Duarte v. Perez*, No. 6:14-CV-2077-ORL-28TBS, 2016 WL 11566245, at *5 (M.D. Fla. Oct. 31, 2016), *report and recommendation adopted*, 2016 WL 11566247 (M.D. Fla. Nov. 22, 2016).  *See also Clyde v. My Buddy Plumber Heating & Air, LLC*, No. 219CV00756JNPCMR, 2021 WL 778533, at *5 (D. Utah Mar. 1, 2021) ("[T]he fact that the My Buddy Defendants failed to keep records of Clyde's hours worked does not bar them from invoking the Retail Exemption.").

13

Consequently, Plaintiffs may approximate the number of hours they worked, which they have done. Specifically, Dahdouh has provided details to explain that he worked an average of 83.5 hours per week, and Morales has provided details to explain that he worked an average of 53 hours per week. Dahdouh Decl. ¶ 7; Morales Decl. ¶ 6. Given that Plaintiffs' testimony, if credited by a factfinder, shows that Plaintiffs worked overtime (and that they received less than $10.88 per hour during at least some weeks), the issue becomes whether Defendants knew or should have known about the additional hours worked. That is because if an "employer knows or has reason to believe that [an] employee continues to work, the additional hours must be counted." *Allen*, 495 F.3d at 1314 (quoting *Reich v. Dep't of Conservation & Nat. Res., State of Ala.*, 28 F.3d 1076, 1082 (11th Cir. 1994)). Here, there is more than a scintilla of evidence to show that Defendants knew or should have known that Plaintiffs worked additional hours beyond what was documented in Road Runner's records. Specifically, Plaintiffs explain that their superiors expected them to work at least 50-60 hours per week (or more) and that they informed their superiors of the approximate schedules they would follow. Dahdouh Decl. ¶ 7; Morales Decl. ¶ 6. Plaintiffs state that they did in fact work these hours, which roughly equate to their approximations of 83.5 hours and 53 hours per week. Dahdouh Decl. ¶ 7; Morales Decl. ¶ 6. Plaintiffs also state that they spoke to their superiors about working at night and from home and that it was common knowledge that they would only be able to communicate with certain customers after regular business hours. Dahdouh Decl. ¶¶ 7-8; Morales Decl. ¶¶ 6-7. They further state that they would receive after-hours emails from one superior with leads that the superior wanted them to follow up on at that time (sometimes as late as 10:00 p.m.). Dahdouh Decl. ¶ 8; Morales Decl. ¶ 7.

Not surprisingly, Defendants disclaim having any knowledge of Plaintiffs working any hours beyond those reflected in Road Runner's time records. *See* DEF Stmt. ¶ 23 (disputed).

Moreover, they note that "[t]here is no violation of the FLSA where the employee performs uncompensated work but deliberately prevents his or her employer from learning of it." *Allen*, 495 F.3d at 1319 (citation omitted). Nonetheless, whether Plaintiffs deliberately prevented Road Runner from learning of their after-hours work is disputed. That is because the parties dispute whether Plaintiffs were required to conduct all work at Road Runner's facility (aside from Dahdouh's last 2 months) and whether they were required to record all of their hours. *See* DEF Stmt. ¶¶ 13, 15-16. It is true that Plaintiffs did not inform Defendants of their additional hours worked, but it is not clear that they were required to and, more importantly, the evidence in the light most favorable to Plaintiffs shows, at the very least, that Road Runner had reason to know Plaintiffs were working more hours than those contained in Road Runner's records.

Additionally, with respect to Dahdouh, Defendants certainly appear to have known that Dahdouh was working remotely during his last one to two months. In fact, for the weeks between March 22, 2020 and May 2, 2020 – weeks during which it is undisputed that Dahdouh did not work at Road Runner's facility, *see* DEF Stmt. ¶ 25 (undisputed) – Defendants indicate in the Motion that Dahdouh was paid six separate commissions ranging from $579.73 to $1,766.96. Motion at 9-10. Obviously, that means Dahdouh was working and that Defendants knew he was working. But Defendants have no record of any hours that Dahdouh worked during those weeks. Thus, without records for these weeks, Dahdouh's burden of proving up his hours worked is relaxed, and his hours can be approximated as discussed in further detail above. Additionally, Defendants' argument that Dahdouh is estopped from claiming overtime for these weeks fails. *See Bailey v. TitleMax of Ga., Inc.*, 776 F.3d 797, 805 (11th Cir. 2015) ("Where, as here, an employer knew or had reason to know that its employee underreported his hours, it cannot invoke equitable defenses based on that underreporting to bar the employee's FLSA claim.").

Ultimately, a factfinder will need to sort out the number of hours Plaintiffs worked and whether Defendants knew or should have known that Plaintiffs worked more hours than what is reflected in Road Runner's records (assuming the factfinder finds Plaintiffs did in fact work such hours).[10]  *See Klinedinst*, 260 F.3d at 1257 ("The number of hours worked per week is a genuine issue of material fact for the factfinder.").[11]

---

[10] In the Motion, Defendants do not separately address Plaintiffs' claims for unpaid minimum wage.  Defendants appear to briefly address the issue of minimum wage in discussing whether they meet the 1.5 times minimum wage portion of the exemption, but they do not spell out their minimum wage arguments.  Regardless, the same factual disputes related to the 1.5 times minimum wage issue also preclude summary judgment on whether Plaintiffs were paid at least minimum wage for all hours worked.  If Road Runner's records are accepted as accurate and complete, Plaintiffs were paid minimum wage for all hours worked.  However, if a jury credits Plaintiffs' testimony, then it could reasonably find that Plaintiffs were not paid minimum wage for all hours worked.  As Plaintiff's Response shows, if Dahdouh worked 83.5 hours per week and Morales worked 53 hours per week, then there are several weeks for which Plaintiffs received less than minimum wage for each hour worked.  *See* Response at 12-13.

[11] *See also Han Ngoc Le v. Anthony Vince' Nail Spa, LLC*, No. 16-81758-CIV, 2017 WL 6948733, at *3 (S.D. Fla. Nov. 27, 2017) ("Here, because neither Plaintiff nor Defendants maintained an accurate record of how many hours Plaintiff worked in any given week, and the difference in the parties' positions regarding the number of hours worked affects whether or not Plaintiff's hourly rate, calculated on a weekly basis, always exceeded $10.875 per hour, the number of hours Plaintiff worked per week is a genuine issue of material fact to be determined by the factfinder, precluding summary judgment."); *Lugo v. Hulett Env't Servs., Inc.*, No. 6:10-CV-1252-ORL-22DAB, 2011 WL 13298502, at *7 (M.D. Fla. June 17, 2011) ("Defendant is required to maintain records of all hours worked by its employees in each workday and the total hours worked in each workweek. Defendant contends that it complied with these regulations by requiring Plaintiff to report and certify his time on the time records, and that it is appropriate to rely on these time records as complete and accurate. On the other hand, there is evidence that Plaintiff performed certain work at home after leaving the office, and that the employer knew about that work and failed to capture it. The issue of whether the record keeping is adequate does not translate to automatic victory for Plaintiff, however. Before *any* analysis can be made as to whether the exemption applies or not, the *fact finder* must determine the amount of hours worked. . . . As a full, undisputed accounting is not provided here, the applicability or not of the exemption is not ripe for determination." (internal citations and footnotes omitted)).

## <u>CONCLUSION</u>

For the reasons discussed above, I respectfully **RECOMMEND** that the District Court **DENY** the Motion [DE 102].

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Rodolfo A. Ruiz, II, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida this 3rd day of August 2021.

**Jared M. Strauss**
**United States Magistrate Judge**